IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMADOR CESARIO RODRIGUEZ, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-0950 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his 1997 conviction for murder. Respondent filed a motion for summary judgment based on expiration of limitations, non-exhaustion, and failure to state a cognizable habeas claim. (Docket Entry No. 17.) Petitioner filed a response. (Docket Entry No. 22.)

Based on careful consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### Background and Claims

Petitioner was convicted of murder on November 10, 1997, and sentenced to thirty years confinement. The conviction was affirmed on appeal. *Rodriguez v. State*, 21 S.W.3d 562 (Tex. App – Houston [14th Dist.] 2000, pet. ref'd). The Texas Court of Criminal

Appeals refused discretionary review.  The United States Supreme Court denied petitioner's petition for writ of certiorari on April 23, 2001.

Petitioner did not file an application for state habeas relief until April 21, 2008.  The application was denied by the Texas Court of Criminal Appeals on September 16, 2009.  Petitioner filed the instant federal habeas petition on February 14, 2010, raising the following three grounds for habeas relief:

(1)     The State violated *Brady* by withholding a surveillance tape of the crime scene and testifying that it had been lost or destroyed;

(2)     Trial counsel was ineffective in failing to subpoena a witness; and

(3)     Petitioner was denied due process during the state habeas proceeding.

Respondent argues that the *Brady* and ineffective assistance of counsel claims are barred by limitations, and that the third claim is unexhausted and fails to state a cognizable federal habeas claim.[1]

*Factual Background*

The state court of appeals made the following statement of facts in its opinion:

Appellant went to a Houston nightclub with a friend, where he met Candy Pequeno and Monica Garza.  Appellant left the club alone around 1:45 a.m. and proceeded to his car.  On the way to his car, he saw Ms. Pequeno and Ms. Garza standing nearby and agreed to give them a ride to their car, which was in a restaurant parking lot across the street.  After the three of them arrived by

---

[1]Petitioner complains that the State failed in its "duty" to provide him a free copy of the entire state court record.  The State owes petitioner no such duty, and petitioner enjoys no constitutional right to a free copy of the record.  *See Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1973); *see also Deem v. Devasto*, 140 F. App'x 574, 574 (5th Cir. 2005).

car in the restaurant's parking lot, appellant began arguing with the occupants of a red Escort, driven by the complainant, Charles Haywood.  In Mr. Haywood's car were his friends, Jermaine and Maria McFadden, who were in the backseat, and Eddie Kelly, who was in the front passenger seat.  The parking lot argument eventually escalated to the point that appellant pulled out a twelve gauge shotgun he kept in his car and fired at Mr. Haywood's car.  The shot killed Mr. Haywood and injured Mr. McFadden.  After the shooting, appellant fled the scene.  Shortly thereafter, the Houston police arrested him.

At his murder trial, appellant claimed that the passengers of Mr. Haywood's car were waving a gun, prompting him to shoot in self-defense.  All three of the passengers in Mr. Haywood's car denied that any of them had a gun on the night of the shooting.  To establish his defense, appellant relied on his own testimony.  He also intended to present the live testimony of Ms. Pequeno, one of the passengers in his car the night of the shooting, who earlier had testified before the grand jury that she saw the occupants of the red Escort waving a gun at appellant's car.  Ms. Pequeno had cooperated with appellant's counsel in pretrial proceedings and had agreed to testify for appellant at trial.  Because she had demonstrated reliability by appearing for all three previous trial settings, appellant relied on Ms. Pequeno to appear at trial voluntarily and did not arrange for a subpoena to compel her attendance.  When the trial began, however, Ms. Pequeno was nowhere to be found.

On the second day of the trial, which was a Tuesday, Ms. Pequeno still had not appeared, nor had appellant determined her whereabouts.  At that point, appellant's counsel secured a subpoena for her attendance at trial but was unable to locate her for service.  Following appellant's testimony on Thursday of the same week, appellant's counsel moved for a continuance until the following Monday, stating that although the defense had not located Ms. Pequeno, they had made contact with her brother, who was helping them look for her.  The trial court denied appellant's motion for continuance but gave appellant the option of reopening his case if he located Ms. Pequeno by the next morning.  In addition, the trial court allowed appellant, over the State's objection, to read to the jury the testimony that Ms. Pequeno had given before the grand jury shortly after the shooting.  By Friday morning, appellant still could not produce Ms. Pequeno or state her whereabouts.  With his motion for continuance denied, appellant presented Ms. Pequeno's grand jury testimony to the jury.

The jury found appellant guilty of murder and sentenced him to thirty years' confinement.  After the trial was over, appellant finally located Ms. Pequeno. Appellant then moved for a new trial, arguing that by denying the motion for continuance, the trial court deprived him the opportunity to put on favorable testimony from a key witness, which may have to led to a different result.  The trial court denied the motion for new trial.

*Rodriguez*, 21 S.W.3d at 564-65.

## *The Applicable Legal Standards*

A.    <u>Habeas Review</u>

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal

4

principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable.  *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

B.  <u>Summary Judgment</u>

In deciding a motion for summary judgment, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a

genuine issue of material fact. *Hamilton v. Segue Software*, *Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant.  Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

*Due Process and State Habeas Proceedings*

Petitioner complains that the state court denied him due process in the review and resolution of his application for state habeas relief.  Habeas challenges to a state habeas proceeding are not cognizable claims for federal habeas relief.  *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995).

Respondent is entitled to summary judgment dismissal of petitioner's claims regarding his state habeas proceedings.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id*.

Petitioner asserts that trial counsel was ineffective in failing to subpoena defense witness Candy Pequeno for trial after she told him she would voluntarily testify.  The trial court allowed petitioner to read Pequeno's grand jury testimony to the jury during the guilt-innocence phase of trial.  In her testimony, Pequeno stated that, on October 6, 1996, she met petitioner at a night club, and that he drove Pequeno and her friend back to their vehicle parked at a nearby restaurant at around 2:00 a.m.  During the drive, Pequeno noticed a gun, perhaps a shotgun, on the floor of petitioner's vehicle.  At the restaurant, petitioner and the driver of a red vehicle "exchanged words" as they drove past one another in the parking lot. Four individuals were in the red vehicle.  Petitioner and the occupants of the red vehicle began yelling at one another, and Pequeno told petitioner she wanted out of the car.  The red vehicle began following petitioner's car, and when Pequeno started to exit the vehicle, she noticed petitioner reaching back towards the gun.  She testified that the front passenger in the red vehicle had also had a firearm, a handgun, and that she had yelled to petitioner that

8

"they" had a gun before she jumped out of petitioner's vehicle and ran away.  Her friend ran

from the vehicle a few seconds later.  She heard a gunshot while running, but did not see the

actual shooting.  Pequeno wanted no contact with petitioner after the incident and was afraid

she would be in trouble because of what happened after she left.  She never called the police

and told no one about the guns, even though she later heard on the news that one of the

individuals in the red vehicle had been fatally shot.  (Docket Entry No. 19-1, pp. 5-33.)

Thus, petitioner was an eyewitness to events occurring between petitioner and the occupants

of the red vehicle prior to the shooting, but not to the actual shooting itself.

Petitioner complains that trial counsel should have subpoenaed Pequeno to appear at

trial, as her live testimony would have had more favorable impact that the reading of her

grand jury testimony.  He further argues that, although Pequeno would have testified live to

the same facts as in her grand jury testimony, she wanted to add her opinion that the

individuals in the red car were trying to kill them and that petitioner seemed to become more

agitated when she yelled that "they" had a gun.  (Docket Entry No. 6-1, p. 12, Affidavit of

attorney J. Sidney Crowley.)  However, in a post-trial affidavit dated December 5, 1997,

Pequeno changed her testimony, and stated that she had been in petitioner's vehicle at the

time he fired the shotgun at the red vehicle, and had seen the passenger in the red vehicle

pointing a handgun at them.  She stated that it was obvious to her that petitioner "had to shoot

or be shot himself."  *Id*., pp. 10-12.  She further admitted that she knew about the trial setting

and had told petitioner's attorney that she would appear, but did not tell them that she had moved, and knew they would be unable to find her for trial. *Id*.

At the motion for new trial hearing held December 16, 1997, Pequeno testified, in relevant part, that she had seen the handgun being held by a occupant in the red vehicle before petitioner reached for his own gun, and that it appeared to her that the people in the red vehicle would shoot them. She further testified that she told petitioner and his attorney that she would testify at trial, and that she knew they would never find her because she had moved. She testified that her grand jury testimony, her affidavit, and her testimony at the motion for new trial hearing were all the same, and that she had no new information to offer. (Docket Entry No. 9-2, pp. 63-66.)

A.    Limitations

Respondent argues that, because petitioner knew at the time of trial in 1997 that trial counsel had not subpoenaed Pequeno and that she could not be located to testify, his one-year limitation commenced at that time. According to respondent, limitations had expired long before petitioner raised the claim in his 2008 application for state habeas relief. Petitioner, on the other hand, argues that limitations did not actually commence until he received Pequeno's affidavit for his state habeas proceeding and learned that she would have corroborated petitioner's testimony that he shot at the red vehicle in self-defense. Elsewhere, he claims that it was a 2009 affidavit executed by attorney J. Sidney Crowley that brought Pequeno's potential additional testimony to his attention.

10

The instant petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Under AEDPA, federal habeas corpus petitions are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

(d)(1)  A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).  Respondent argues that, under section 2244(d)(1)(A), limitations for petitioner's ineffective assistance claim commenced on April 23, 2001, when the Supreme Court denied his petition for writ of certiorari, and expired one year later, on April

23, 2002. Respondent contends that, because petitioner filed his application for habeas relief in April 2008, long after expiration of limitations, the instant federal petition is time-barred. *See Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999).

Petitioner argues that limitations commenced in June or July of 2009, when he obtained Pequeno's and Crowley's affidavits during his state habeas proceeding and discovered the factual predicate of his claim. Petitioner contends that limitations did not expire prior to his timely filing the instant petition on February 14, 2010. To the extent petitioner complains that trial counsel failed to subpoena Pequeno, he was aware of this fact at the time of trial, and limitations expired on this claim on April 23, 2002. Because his state habeas application was filed after that date, the claim is barred by limitations.

Petitioner further argues that he did not "discover" Pequeno's potential additional testimony until he read attorney J. Sidney Crowley's affidavit dated June 17, 2009, which stated as follows:

> My name is J. Sidney Crowley and I am a licensed attorney in the State of Texas. My investigator, Ernest Humberson was able to locate a phone number for possible witness Candy Pequeno. She was unwilling to give her address but agreed to speak with me by telephone, which she did June 18, 2009. I read to her verbatim the entire transcript of her grand jury testimony that was introduced in evidence at the Defendant's trial. At the conclusion she stated to me that those are the same facts to which she would have testified had she been called as a witness at the trial. She stated that the only difference would have been that she wanted to state her opinion that the people in the complainant's car were trying to kill them and that the Defendant seemed to become more agitated when she yelled that "they" had a gun.

(Docket Entry No. 22, Exhibit C.)

12

However, Pequeno had appeared in person at the hearing on petitioner's motion for new trial on December 16, 1997, and expressly testified that her grand jury testimony, her affidavit, and her testimony at the motion for new trial hearing were all the same, *and that she had no new information to offer*. (Docket Entry No. 9-2, p. 71.)  At the hearing, she testified that it appeared to her that the people in the red vehicle might shoot her and everyone in petitioner's car; that petitioner was in fear for his life; and that petitioner thought that he had to act in self-defense. (Docket Entry No. 9-2, p. 63.)  This 1997 testimony is not substantially dissimilar from her 2009 statement to Crowley that the people in the red vehicle were trying to kill them and that petitioner became more agitated when he realized they had a gun.

To any extent Pequeno's testimony at the motion for new trial hearing differed from, and was more favorable than, her grand jury testimony, petitioner was on notice of the factual basis for his claim as of December 16, 1997, the date of the hearing.  Pequeno clearly and unambiguously testified at the hearing that she had no further information or testimony to give regarding the incident.  That she may have embellished her prior testimony some twelve years later while speaking by telephone with Crowley did not implicate any deficiency in trial counsel's performance, given her unequivocal testimony on December 16, 1997, that she had nothing further to add.  The record does not support petitioner's assertion that his one-year limitation commenced in 2009 with his reading of Crowley's affidavit.  Petitioner's claim

that counsel was ineffective in failing to subpoena Pequeno's appearance at trial, based on her 2009 statement to Crowley, is barred by limitations.

Even assuming this claim were not barred by limitations, it is without merit, as shown by the following.

B.    No *Strickland* Violation

In his affidavit submitted to the state court on collateral review, trial counsel testified, in relevant part, as follows:

> I did not originally believe that it was necessary or beneficial to subpoena witness Candy Pequeno in this case,  I was able to interview [her] and did not think that she made a very credible witness.  I got inconsistent versions of the story regarding the shooting from Ms. Pequeno when I interviewed her.  In fact, when I read her grand jury testimony it was different than what she had previously told me regarding the circumstances of the shooting.  It was also inconsistent with the crime scene itself and with that other witnesses were going to testify to.  She would have made a poor witness regarding Mr. Rodriguez's claim of self-defense and I believed that she would be unable to stand up to cross examination by the State.  Ms. Pequeno had always been very cooperative and appeared voluntarily every time she was asked to.  I was unable to locate her at the final trial setting.  [Petitioner] really wanted Ms. Pequeno to present the same testimony that she gave in front of the grand jury at this trial.  Though I was reluctant to call her as a witness, and was unsure that she would offer a consistent story at this trial, I did want to get in a specific statement she made to the grand jury.  Ms. Pequeno told the grand jury that she saw the passenger in the victim's car brandish a gun and I believed that this partially corroborated [petitioner's] self-defense claim.  When she did not show up to court, I was able to present the issue to the court, and I was able to find a case that convinced the trial court to allow me to read Ms. Pequeno's grand jury testimony into the record in front of the jury in this case. This was far more favorable to our defense because I got to read her testimony regarding the shooting and the jury was not able to see the weakness and inconsistency of her testimony on cross-examination.  I did not wish to have this witness present or attached.  This was the best and only way to put Ms. Pequeno's

14

testimony on in a way that could corroborate [petitioner's] self-defense claim
without allowing the jury to judge her credibility which would have harmed
the defense.

\* \* \* \*

For the reason I stated above I did not believe that [Ms. Pequeno] would
provide beneficial live testimony for Mr. Rodriguez's defense in this case and
I could not tell the court that I expected [her] to testify in a way that would
support [petitioner's] defense.  I expected that [Ms. Pequeno] would harm
[petitioner] and as such there was nothing to offer.  The testimony I was able
to read into the record from Ms. Pequeno was in my opinion the best possible
testimony we could ever hope to present from her.

(Docket Entry No. 7-4, pp. 38-40.)

In determining whether counsel's performance was deficient, judicial scrutiny must

be highly deferential, with a strong presumption in favor of finding that trial counsel

rendered adequate assistance and that the challenged conduct was the product of a reasoned

trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  Here, trial counsel set

forth his reasons for his professional decisions regarding Pequeno, and his reasons for not

having subpoenaed her for trial were not unreasonable.  Further, given Pequeno's testimony

at the motion for new trial hearing held one month after the trial, petitioner presents no

probative summary judgment evidence that, had trial counsel been able to subpoena Pequeno

and compel her attendance at trial, there is a reasonable probability that the result of the trial

would have been different.

More importantly, petitioner does not establish that, had trial counsel issued a

subpoena for Pequeno's appearance at trial, that he would have been able to serve the

15

subpoena and compel her attendance.  At the motion for new trial hearing, Pequeno made

clear she did not want petitioner or trial counsel to know how to find her for trial:

> DEFENSE COUNSEL:     Did [trial counsel] – did you tell him that you would testify on behalf of Mr. Rodriguez?
>
> PEQUENO:  Yes, sir, I did.  If I had to.
>
> DEFENSE COUNSEL:     And did you tell him that you would willingly come to court whenever the thing went to trial?
>
> PEQUENO:  Yes, sir.
>
> *   *   *   *
>
> DEFENSE COUNSEL:     And did you know that the case was set for trial last month?
>
> PEQUENO:  Yes, sir.  I did.
>
> DEFENSE COUNSEL:     Okay.  And where did you live when you first told Mr. Rodriguez that yes, I'll come to court to testify for you?
>
> PEQUENO:  I lived in Pasadena with my mother.
>
> DEFENSE COUNSEL:     Was it 209 Tabor Street?
>
> PEQUENO:  Yes, sir. Yes, sir, it was.
>
> DEFENSE COUNSEL:     And what was your phone number that you had at that time, do you recall?
>
> PEQUENO:  No.  477-1407, that could have been it.
>
> DEFENSE COUNSEL:     Was it a different phone number that you had when this case went to trial last November?
>
> PEQUENO:  Yes, sir.

16

DEFENSE COUNSEL:     And was your address different when this case went to trial in November?

PEQUENO:  Yes, sir.

DEFENSE COUNSEL:     And had you told Mr. Rodriguez here that you had changed your phone number and your address?

PEQUENO:  No.

DEFENSE COUNSEL:     *Did you notify anybody with respect to Mr. Rodriguez here as to how they could get in touch with you to be in court in November?*

PEQUENO:  *No, sir.*

DEFENSE COUNSEL:     *Okay. Was there any way at all that they could have known how to get in touch with you?*

PEQUENO:  *No, sir, not really.*

(Docket Entry No. 9-2, pp. 64-66, emphasis added.)  Thus, Pequeno knew that petitioner and his attorney had no way of finding her for purposes of compelling her attendance at trial, and she took no steps to inform them of her whereabouts for trial.  Petitioner presents no probative summary judgment evidence establishing that, had trial counsel issued the trial subpoena, he would have been able to compel Pequeno's attendance.

The state habeas court denied relief on this issue.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No

basis for habeas relief is shown, and respondent is entitled to summary judgment dismissal of this issue.

*Brady Claim*

Petitioner next complains that the State deliberately withheld from the defense a surveillance tape from the scene of the offense that may have exonerated him.

In arguing that the State withheld evidence, petitioner raises a claim under *Brady v. Maryland*, 373 U.S. 83 (1963).  Under *Brady*, suppression by the prosecution of material evidence favorable to the defendant, following a request for such evidence, violates the defendant's due process rights under the Fourteenth Amendment.  To establish a *Brady* violation, a petitioner must establish that the prosecution suppressed evidence that was material and favorable to the defense.  *Id*., 373 U.S. at 87-88.  *See also Jackson v. Johnson*, 194 F.3d 641, 648 (5th Cir. 1999).

A.    <u>Limitations</u>

Respondent argues that petitioner's *Brady* claim is barred by the one-year statute of limitations.  In his affidavit attached to his response to the motion for summary judgment, petitioner testifies that,

> [I]t was not until late 2005 that I became aware that during the post-conviction civil case proceedings involving a wrongful death suit filed by the complainants' family against Jojo's restaurant where the shooting occurred, testimony was adduced from Mr. Scott Durfee, who was counsel for the Harris County District Attorney, that a certain video surveillance tape that my attorney and I had originally sought through the discovery process at trial to review, but had been inadvertently erased according to police by the then

18

manager of Jojos, which depicted events in the parking lot of Jojos on the night/early morning hours when the shooting had occurred, had been found to be present in the file given to the civil attorneys during the discovery process in that case.

(Docket Entry No. 22, p. 31.)  Thus, petitioner testified that, in late 2005, he became aware that the "destroyed" surveillance videotape had been found during discovery in the civil lawsuit.  However, petitioner did not seek state habeas relief on the issue until April 2008. Under section 2244(d)(1)(D), limitations commenced on the date on petitioner discovered, or could have discovered, the *factual predicate* of his claim.  By his own testimony, petitioner states that he knew in late 2005 that the videotape had been found.  Limitations commenced at that point, and had long expired by April 2008 when he raised the issue in his state habeas proceedings.  That petitioner did not obtain an actual copy of Durfee's deposition until an undisclosed date in late 2007 did not alter the fact of his earlier knowledge of the factual predicate of his claim. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998).  Accordingly, petitioner's claims for denial of due process and a *Brady* violation based on the "lost" or "destroyed" videotape are barred by limitations.  Respondent is entitled to summary judgment under these issues.

B. No *Brady* or Due Process Violation

Even assuming the claims were not time barred, petitioner presents no probative summary judgment evidence as to the actual content of the surveillance videotape, and does

19

not establish that he was denied material evidence that was favorable to his defense or that his trial was fundamentally unfair due to lack of the videotape.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 17) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE.  Any and all pending motions are DENIED AS MOOT.  A certificate of appealability is DENIED.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on March 22, 2011.

Gray H. Miller
United States District Judge

20